**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BLOCK CLUB CHICAGO,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | Case No. 25-cv-1335 (TSC) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This case involves the application of FOIA Exemption 7(C), which requires a balancing of the public interests and privacy considerations associated with disclosure of the identities of the so-called "dangerous" "criminals" detained by ICE. As explained in Plaintiff's motion, the public interests here outweigh any privacy concerns. *See* ECF No. 17 ("P. Mot."). In their opposition brief, Defendants provide no reason to conclude otherwise.

With respect to privacy interests, Defendants do not defend the initial theories that they had presented, such as the contention that disclosure could lead to "identity theft" or "physical harm." They do not really dispute that many ICE detainees would want to speak with journalists, and muster only the obviously implausible statement that they somehow would have done so already—from the inside of a detention facility with limited ability to contact the outside world. Defendants offer no response to the fact that ICE itself has publicized this same personal information about its detainees and invited members of the public to "Share" it on their social media, undermining its assertion that its concern here is the "embarrassment" of these detainees. And in any event, they exaggerate the strength of any privacy interest by conflating ICE detainees with suspected criminals.

With respect to public interests, Defendants largely ignore the evidence and arguments that Plaintiff presented in its motion. The requested information is necessary to evaluate how ICE is performing its statutory duties, such as by ascertaining how detainees move through the system, including how long and where they are kept, and reporting on their condition and experiences. In their brief, Defendants do not dispute any of this, nor do they provide any reason to discount these public interests. The only public interest that Defendants address is the testing of their previous representations that the Chicago-area raid at issue here targeted "criminal aliens," which Defendants claim is "entirely speculative." But it is not speculative at all—assuming those

representations were true, there will be criminal records (which are public and searchable by name) associated with these individuals. Assessing these records will also allow the public to test the assertion that these individuals were "dangerous" to their communities, also as ICE represented at the time. Alternatively, if ICE's representations were not true, that will be valuable public information as well. Either way, there is plainly a strong public interest in transparency here. The very purpose of FOIA is to allow the public to hold the government accountable for its statements and actions.

Finally, with respect to the balancing of public and private interests, Defendants would reduce the analysis to an empty formality. In fact, Defendants offer no analysis at all—by taking the position that there are no public interests at issue here, Defendants simply decline to do any balancing, which courts have consistently held is insufficient to establish Exemption 7(C). Accordingly, the Court should grant Plaintiff's motion, deny Defendants' motion, and order Defendants to produce unredacted versions of the two spreadsheets at issue.

## II. ARGUMENT

### A. Defendants do not address the new foreseeable harm requirement set forth in the 2016 FOIA Improvement Act.

As explained in Plaintiff's motion, the 2016 FOIA Improvement Act augmented the threshold for FOIA exemptions, now requiring that agencies show not just that disclosure "could" result in some foreseeable harm, but actually "would." *See* P. Mot. at 6. In their brief, Defendants do not dispute that the foreseeable harm requirement applies to records withheld under Exemption 7(C), but then proceed to ignore it, repeatedly arguing that "disclosure ***could*** constitute an unreasonable invasion of personal privacy." *See* D. Opp. at 5 (emphasis added). For the reasons explained in Plaintiff's motion, the Court should hold Defendants to their foreseeable harm burden, which they do not even purport to have met.

**B. Defendants' response confirms the privacy interests here are minimal.**

In their motion, Defendants set forth numerous theoretical harms that could allegedly occur from the requested disclosures, ranging from identity theft to unwanted contact to physical harm. *See* D. Mot. at 8. As explained in Plaintiff's opposition, those assertions are unfounded and insufficient. *See* P. Mot. at 7–9. In their response, Defendants do not even address these issues, let alone provide any rebuttal to the arguments Plaintiff made regarding them. Accordingly, for the reasons given in Plaintiff's motion, such alleged theoretical harms should be given no weight in the balancing.

Instead of defending those initial theories, Defendants now rely solely on the argument that "individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations[.]" D. Opp. at 2. There are three problems with this contention.

***First***, Defendants do not address *Lepelletier*, which held that it "is overly paternalistic to insist upon protecting an individual's privacy interest when there is good reason to believe that he or she would rather have both the publicity and the [benefit] than have neither." *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 48 (D.C. Cir. 1999). As explained in Plaintiff's motion, many ICE detainees may well welcome public scrutiny of their situation, as that has led in the past to beneficial outcomes. *See* P. Mot. at 7. In response, Defendants contend that the decision of whether "to speak out publicly or contact journalists themselves" should be left to those detainees. D. Opp. at 2.

That response is unconvincing because it implausibly assumes that ICE detainees are capable of contacting journalists. Almost no detainee will have a rolodex of journalists, let alone one that they happened to be carrying when picked up by ICE, or one that ICE let them keep while detained. ICE's detention facilities presumably lack the facilities one would require to identify journalists who might be interested in telling a detainee's story. And even if a detainee could

identify journalists, contacting them can be impossible: the Chicago-area ICE facility in operation at the time of these raids was found to have "deplorable conditions" with "phone infrastructure that is rarely, if ever, operational," making it impossible for detainees to adequately contact the outside world. Memorandum Opinion & Order at 2-3, *Moreno Gonzalez v. Kristi Noem, Secretary, DHS*, 1:25-cv-13323, (N.D. Ill. Nov. 17, 2025), Dkt. No. 87.[1] Thus, in most cases, there is just one feasible way for a journalist to tell a detainee's story: the journalist must initiate contact.

***Second***, Defendants' position is irreconcilable with their conduct outside of this case. As explained in Plaintiff's motion, ICE has published the name, age, residency, detention photograph, and description of hundreds of people it has detained, including people who have not actually been convicted of any crimes. *See* P. Mot. at 3–4. It then invites members of the public to "Share" the detainees' personal information on their social media to heighten its visibility. *Id.* Presumably, it was not these detainees' decision to come forward and have "their private business spread publicly" (D. Opp. at 2) in this manner—ICE was happy to make that decision itself. However, when it comes to disclosing the names of other detainees in such a way that would allow transparency and accountability of its actions, ICE instead takes the position that such disclosures are impermissible because it could lead to "embarrassment" or "reputational harm." Again, if a federal agency truly foresaw the harms it now posits, it would presumably not engage in such behavior. *See* P. Mot. at 8–9.

***Third***, even if the ICE detainees do possess a privacy interest, Defendants exaggerate its strength. They do so by wrongly conflating the privacy interests of ICE detainees—people who

---

[1] While the court in *Moreno Gonzalez* ordered ICE to provide telephone services, it did so only to facilitate communications between detainees and their counsel. *See* Temporary Restraining Order at 3, *Moreno Gonzalez v. Kristi Noem, Secretary, DHS*, 1:25-cv-13323, (N.D. Ill. Nov. 5, 2025), Dkt. No. 49.

may simply be suspected of having committed civil immigration infractions, such as overstaying a visa—with those investigated for possible criminal violations. *See* 8 U.S.C. § 1357 (a)(2) (authorizing immigration agents to arrest noncitizens for violating immigration laws); 8 U.S.C. § 1226(a) (authorizing detention pending removal proceedings). No doubt, people have "a strong interest in not being associated unwarrantedly with alleged criminal activity." D. Opp. at 2 (quoting *Stern v. FBI*, 737 F. 2d 84, 91-92 (D.C. Cir. 1984)). That connotation was present in all of Defendants' cases, for each involved records of investigations into possible criminal violations. *See Schrecker v. DOJ*, 349 F.3d 657, 660 (D.C. Cir. 2003); *Senate of P.R. v. DOJ*, 823 F.2d 574, 578 (D.C. Cir. 1987); *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F. 3d 885, 894 (D.C. Cir. 1994); *Lazaridis v. Dep't of State*, 934 F. Supp. 2d 21, 37 (D.D.C. 2013); *Viola v. DOJ*, No. 16-cv-1411, 2025 WL 1650387, at *2 (D.D.C. June 11, 2025). But appearing on an ICE arrest or detention list does not carry that connotation given ICE's civil enforcement powers. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (immigration proceedings "are civil, not criminal, and we assume that they are nonpunitive in purpose and effect"); *U.S. v. Nofziger*, 878 F.2d 442, 452 (D.C. Cir. 1989) ("In contrast to civil liability, a criminal conviction expresses society's condemnation of culpable conduct; therefore, usually the stigma of criminal conviction is not visited upon citizens who are not morally to blame . . ."); *U.S. v. Proj. on Gov. Oversight*, 839 F.Supp.2d 330, 342 (D.D.C. 2012) (a violation that is "civil in nature" does "not carry with it the stigma of a criminal conviction"). So at the very least, their interest is weaker than Defendants portray it.

### C. Defendants offer no reason to discount the substantial public interests in identifying the detainees.

As explained in Plaintiff's motion, there are substantial public interests associated with the redacted information. *See* P. Mot. at 9–13. These public interests are addressed in turn.

***First***, the redacted information is necessary to evaluate ICE's public assertions of how it is performing its statutory duties, such as its representations that it is targeting the "worst of the worst" criminal non-citizens. *See* P. Mot. at 9–12. Defendants do not appear to dispute that this is a valid public interest under FOIA, which it obviously is, since testing ICE's assertions would "shed light on [ICE's] performance of its statutory duties." *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994). They instead dispute that disclosure would advance that interest, casting it as "entirely speculative." *See* D. Mot. at 5. It is not speculative at all.

With respect to the specific Chicago-area raids at issue in this case, ICE at the time represented to the affected communities that the raids comprised "targeted operations" to detain "criminal" non-citizens who are "potentially dangerous" to the community.[2] The veracity of those statements—statements that are dubious for reasons given in Plaintiff's motion, which Defendants introduce no evidence to contradict—will appear from the public record. *See* P. Mot. at 9-10. Criminal history is not secret, and there are both governmental and private search tools to locate such records. Cross-referencing the names at issue here with these records will allow the public to understand the extent to which the targeted individuals were in fact "criminal," as ICE represented to the public at the time, as well as whether they were in fact non-citizens. *See* P. Mot. at 10–11. Clearly, this requires Plaintiff to know the identities of the people ICE detained: exactly what Plaintiff seeks, and exactly what Defendants redacted. In short, the redacted records plainly would advance a valid public interest.

***Second***, the requested information is also necessary to investigate and report on particular incidents. *See* P. Mot. at 12–13. As explained in the declaration filed in support of Plaintiff's motion, the redactions at issue here have consistently frustrated the ability to report on ICE's

[2] https://x.com/ICEgov/status/1883577941210062880.

enforcement actions in Chicago. *See* Dumke Decl., ¶¶ 8–14. For example, without arrest locations, the scope and nature of the ICE raids targeting entire apartment building complexes cannot be ascertained, nor can their alleged purposed be evaluated. *See* P. Mot. at 13; Dumke Decl., ¶ 14. Without identifying information (names, Case IDs, etc.), it is impossible to ascertain how detainees move through the system, including how long and where they are kept, because ICE will not speak to journalists or provide information about specific detainees unless the journalist identifies them first. *See* P. Mot. at 12–13; Dumke Decl., ¶ 10. And reporting on these detainees' conditions and experiences is fruitless if journalists do not even know where the individuals are being kept or have any ability to reach out to them. *See id.* In their brief, Defendants do not dispute any of these facts, let alone offer a reason to discount these strong public interests. *See* D. Opp. at 3–5.

In sum, by refusing to meaningfully engage with the public interests at issue here, Defendants provide no basis to not give them the full weight to which they are entitled, which is substantial.

**D. Defendant has not meaningfully balanced the public interests, which in this case outweigh the privacy interests.**

As explained in Plaintiff's motion, an agency asserting Exemption 7(C) cannot simply turn the balancing of public and private interests into an "empty formality" that provides "surprisingly little weight" to the public interests. *Campbell v. DOJ*, 164 F.3d 20, 33 (D.C. Cir. 1998). Here, what Defendants do is even worse—they take the position that releasing the requested information "serves no public benefit," Pineiro Decl., ¶ 24, and accordingly make no attempt to meaningfully weigh these competing interests.

Plaintiff raised this issue in its motion, and invited Defendants to address it. *See* P. Mot. at 14. Rather than do that, Defendants simply continue their approach of contending that there is

no meaningful public interest at all. As explained in the previous section, that is simply incorrect—there are clear public interests associated with disclosing this information, and dogmatically pretending there are not is precisely what courts have held agencies cannot do when asserting Exemption 7(C). *See Campbell*, 164 F.3d at 33. In short, Defendants have failed to show that any privacy interests here outweigh the strong public interests in disclosure. *See* P. Mot. at 13–14.

## III. CONCLUSION

For the reasons set forth in Plaintiff's opening brief and above, the Court should grant summary judgment to Plaintiff, deny summary judgment to Defendants, and order Defendants to release unredacted versions of the produced spreadsheets.

Dated: March 6, 2026

Respectfully submitted,

*/s/ Stephen Stich Match*

Matthew Topic, D.C. Bar No. IL0037
Stephen Stich Match, D.C. Bar No. MA0044
Merrick Wayne, D.C. Bar No. IL0058
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, IL 60607
Tel. (520) 488-0486
match@loevy.com
foia@loevy.com

*Attorneys for Plaintiff*