UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BLOCK CLUB CHICAGO,**

    *Plaintiff,*

**v.**

**DEPARTMENT OF HOMELAND SECURITY**, *et al.*,

    *Defendants*.

No. 25-cv-1335 (TSC)

<u>MEMORANDUM OPINION</u>

Plaintiff Block Club Chicago, a nonprofit news organization, seeks, under the Freedom of Information Act ("FOIA"), unredacted spreadsheet records from U.S. Immigration and Customs Enforcement ("ICE") documenting arrests and detentions during Chicago-area immigration enforcement operations in January 2025. Before the court are the parties' cross-motions for summary judgment. *See* Defs.' Mot. Summ. J. ("Defs.' Mot."), ECF No. 16; Pl.'s Cross Mot. Summ. J. ("Pl.'s Mot."), ECF No. 17. For the reasons set forth below, Defendants' motion will be GRANTED and Plaintiff's cross-motion will be DENIED.

## I.     BACKGROUND

On January 30, 2025, Plaintiff submitted a FOIA request seeking records of all arrests and detentions involving ICE personnel in the Chicago region from January 21 to 30, including the name and age of each arrestee or detainee; the arrest or detention case number; the date of the action; the address of the action; and the current status of the arrest or case. *See* Pineiro Decl. ¶ 5. In June 2025, Defendants produced two spreadsheets with the requested information, with redactions under Exemptions (b)(6), (b)(7)(C), and (b)(7)(E). *Id.* ¶ 10. After further review, Defendants removed the (b)(7)(E) redactions. *Id.* ¶ 11. Plaintiff does not challenge the adequacy

of Defendants' search, but challenges the remaining redactions of detainee names, case numbers, home addresses, and birth dates.

## II.       LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  The agency withholding responsive documents bears the burden of establishing that each claimed exemption applies, and the court reviews that determination de novo.  *See Citizens for Resp. & Ethics in Washington (CREW) v. DOJ*, 746 F.3d 1082, 1088 (D.C. Cir. 2014); 5 U.S.C. § 552(a)(4)(B). Further, under the FOIA Improvement Act of 2016, "the agency bears the burden of showing that it 'reasonably foresees that disclosure would harm an interest protected by an exemption' or that 'disclosure is prohibited by law.'"  *Leopold v. DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024) (quoting 5 U.S.C. § 552(a)(8)(A)(i)).

The court may grant summary judgment based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)), and advance "logical" or "plausible" justifications for invoking the exemption, *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982). Agency declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims.'"  *SafeCard*, 926 F.2d at 1200 (quoting *Ground Saucer Watch*, 692 F.2d at 771).  Instead, "the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records."  *Span v. DOJ,* 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *DOJ v. Tax Analysts,* 492 U.S. 136, 142 (1989)).

### III.    ANALYSIS

Plaintiff argues that Defendants improperly withheld detainee names, case numbers, home addresses, and birth dates under FOIA Exemptions 6 and 7(C).  The court disagrees.

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6). Exemption 7(C) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.* § 552(b)(7)(C).  Although Defendants invoked both exemptions, the court need only consider whether they properly invoked Exemption 7(C), which "'is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material."  *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting *Dep't of Def. v. FLRA,* 510 U.S. 487, 496 n.6 (1994)).  And because Plaintiff does not dispute that the withheld records constitute law enforcement records under Exemption 7(C), the court's task is limited to balancing the privacy interests implicated by the withheld information against the public interest in disclosure.  *See* Pl.'s Mot. at 5 n.8.

The detainees about whom Plaintiff seeks identifying information have substantial privacy interests at stake.  "Individual privacy interests are heightened in the context of law enforcement files, wherein the very 'mention of an individual's name . . . will engender comment and speculation and carries a stigmatizing connotation.'"  *Dillon v. DOJ*, 444 F. Supp. 3d 67, 95 (D.D.C. 2020) (quoting *Roth v. DOJ*, 642 F.3d 1161, 1174 (D.C. Cir. 2011)); *see Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. DOJ*, 823 F.2d 574, 588 (D.C. Cir. 1987) ("There is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm.");

*Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) ("[T]his court has found that individuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation."). Recognizing this danger, this Circuit's "decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records." *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003).[1]

Any countervailing public interest must be evaluated in light of FOIA's central purpose: "to open agency action to . . . public scrutiny." *Id.* (quoting *DOJ v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 772 (1989)). The relevant public interest under Exemption 7(C) is thus limited to information that would "'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *FLRA*, 510 U.S. at 497 (quoting *Reps. Comm. for Freedom of Press*, 489 U.S. at 773). "This inquiry, moreover, should focus not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld." *Schrecker*, 349 F.3d at 661. As a general rule, third-party identifying information contained in law enforcement files is presumptively exempt "unless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the names of private individuals appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence." *SafeCard*, 926 F.2d at 1205–06. Absent such evidence, "there is no reason to believe that the incremental public interest in such information would ever be significant." *Id.* at 1206.

---

[1] Given such risks, Defendants have also satisfied their statutory burden of showing that they "reasonably foresee[]" that disclosure of identifying information would harm privacy interests cognizable under Exemption 7(C). 5 U.S.C. § 552(a)(8)(A)(i).

Plaintiff asserts that there is a public interest in testing Defendants' representation that their operations in the Chicago area comprised "targeted operations" to "keep[] potentially dangerous criminal aliens out of our communities," and that the redacted information would enable the public to assess the extent to which targeted individuals were in fact criminals and non-citizens. Pl.'s Mot. at 2, 9–10. There is certainly a public interest in evaluating the veracity of Defendants' representations about the nature and purpose of Chicago-area raids and whether individuals are being lawfully detained. But when the interest on the other side of the ledger is third parties' obvious and overwhelming interest in keeping private identifying information contained in law enforcement records, this Circuit has set a high bar to overcome that interest, requiring "compelling evidence" of "illegal activity." *SafeCard*, 926 F.2d at 1205–06.[2]

Plaintiff has not met this burden. As evidence of agency wrongdoing, Plaintiff claims that the agency's assertions about who it is detaining "appear to be false" because "journalists have uncovered more than 170 such incidents in the first nine months of the current administration" and baldly asserts that Defendants' "citizenship determinations have been wrong before." Pl.'s Mot. at 10. Plaintiff acknowledges that "how false is still unclear, as is the basis and circumstances for any such arrests or detentions." *Id.* Given the sensitive and stigmatizing nature of the information Plaintiff seeks, these allegations, standing alone, cannot overcome the strong presumption against

---

[2] While the D.C. Circuit's decision in *CREW*—which involved a major political corruption investigation culminating in DOJ's decision not to prosecute a prominent member of Congress— found *SafeCard*'s categorical rule inapplicable in light of the public interest in understanding how the agency was performing its statutory duties, *see* 746 F.3d at 1092–93, 1096, it does not compel disclosure of the redactions at issue here. *CREW* held only that, "in light of the significant public interests at stake, the agency's categorical withholding of *all responsive records* under Exemption 7(C) was improper" and remanded for a segregability analysis. *Jett v. Fed. Bureau of Investigation*, 139 F. Supp. 3d 352, 361–62 (D.D.C. 2015) (citing *CREW*, 746 F.3d at 1096). In doing so, the court reaffirmed that "names and identifying information of third parties contained in investigative files are presumptively exempt" under *SafeCard*. *CREW*, 746 F.3d at 1096.

disclosure. *See CREW*, 746 F.3d at 1096 ("[T]he names and identifying information of third parties contained in investigative files are presumptively exempt."). Despite the strong public interest in transparency, the court concludes, consistent with a "long line of FOIA cases" in this Circuit, that disclosure of the identities of third parties potentially connected with criminal prosecutions would constitute "an unwarranted invasion of privacy." *Nation Mag.*, 71 F.3d at 896.

And even assuming Plaintiff has met its evidentiary burden, the incremental value of the identifying information Plaintiff seeks does not justify disclosure. *See Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004) (requiring that the information sought "is likely to advance" the public interest); *SafeCard*, 926 F.2d at 1206 (requiring that the information is "necessary" to confirm or refute evidence of agency wrongdoing). Plaintiff theorizes that by cross-referencing detainee names with publicly available criminal records and voting records and by conducting interviews, the public could assess whether targeted individuals were in fact criminals and non-citizens. *See* Pl.'s Mot. at 10. But the requested information has, at best, limited probative force. Voting records, for example, are inherently incomplete: they capture only individuals who have registered to vote, and the absence of a record does not indicate non-citizenship. Indeed, in the last presidential election, more than 25% of the voting-age population was not registered to vote. *See* U.S. Census Bureau, *2024 Presidential Election Voting and Registration Tables Now Available* (Apr. 30, 2025), https://www.census.gov/newsroom/press-releases/2025/2024-presidential-election-voting-registration-tables.html. The incremental value of interviews is even more speculative, as it assumes the public could successfully contact these individuals and receive truthful responses about their citizenship and criminal history. And even assuming detainee names are sufficient to assess criminal history, an individual's criminal record is neither necessary nor sufficient to establish that he was unlawfully arrested or detained, as detention authority turns on

statutory grounds for removability and immigration status, not criminal history alone. *See* 8 U.S.C. §§ 1226(a), (c)(1).

Plaintiff acknowledges that detainees have cognizable privacy interests but argues that "this case presents special circumstances that mitigate them." Pl.'s Mot. at 7. The court is unpersuaded. Plaintiff argues that detainees might welcome public attention because it has historically led to beneficial outcomes such as family reunification, improved detention conditions, and congressional investigations. *Id.* But this is precisely the kind of paternalistic reasoning that cuts both ways: while some detainees might welcome compelled disclosure, others would likely not. Plaintiff also contends that Defendants' privacy concerns are undermined by their practice of publishing names and photographs of certain detainees on their "Worst of the Worst" website. *Id.* at 8–9. This argument conflates the agency's disclosure choices with the privacy rights at stake. The privacy interest that Exemption 7(C) protects belongs to the individual whom the information concerns, not the agency—Defendants' voluntary disclosure of information about some detainees does not waive the privacy rights of others.

The court does not discount the significant and compelling public interest in determining whether the government is operating within the bounds of the law in its detention activities. But given detainees' clear and substantial privacy interests, the court cannot conclude at this stage that compelled disclosure of sensitive identifying information is warranted. Defendants have therefore met their burden of justifying the withholdings under Exemption 7(C).[3]

---

[3] Plaintiff does not dispute that Defendants have produced all reasonably segregable non-exempt material. *See* 5 U.S.C. § 552(b). Defendants maintain that they did not withhold any non-exempt information on the grounds that it was non-segregable. *See* Defs.' Mot. at 9–10. Plaintiff does not challenge this assertion, and therefore any argument to the contrary is forfeited. *See Hairston v. Boardman*, 915 F. Supp. 2d 155, 160 (D.D.C. 2013) ("A party opposing a summary judgment motion who does not address an argument advanced in the motion is deemed to have conceded the argument.").

## IV.    CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Motion for Summary Judgment, ECF No. 16, and DENY Plaintiff's Cross Motion for Summary Judgment, ECF No. 17. A separate order will accompany this Memorandum Opinion.

Date: April 23, 2026

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge